IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| WILLIAM DOUGLAS DAWSON, | ) | C/A No. 4:06-3205-SB-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| WARDEN STAN BURT, LIEBER CORRECTIONAL INSTITUTION, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner, William Douglas Dawson ("petitioner/Dawson"), a pro se prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the respondent's motion for summary judgment. (Document # 39.)[1]

The petitioner filed this petition for a writ of habeas corpus on November 8, 2006.[2]  On January 18, 2008, the respondent filed a motion for summary judgment, along with supporting memorandum and exhibits.[3]  The undersigned issued an order filed January 22, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the petitioner of the motion for

---

[1]This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

[2]This date reflects the date that the petition was stamped received at the Lieber Correctional Institution mailroom.  (Pet. Attach.1.)  Houston v. Lack, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

[3]The respondent first filed for summary judgment on April 9, 2007.  (Document # 20.)  However, after the petitioner moved to amend his petition to delete several unexhausted claims, the respondent filed this second motion for summary judgment.

summary judgment procedure and the possible consequences if he failed to respond adequately.  On February 19, 2008, the petitioner filed a response to the respondent's motion for summary judgment.

## I.  PROCEDURAL HISTORY

The petitioner is currently housed in the Lieber Correctional Institution ("LCI") of the South Carolina Department of Corrections ("SCDC").  In October1997, the petitioner was indicted for armed robbery.   He was represented by attorney Robert S. Dover.  On March 17-18, 1998, the petitioner was tried before a with the Honorable Thomas J. Ervin presiding.  The jury found the petitioner guilty and Judge Ervin sentenced the petitioner to thirty years.  The petitioner timely filed a direct appeal.

Appellate Defender Aileen Clare represented the petitioner on appeal.  On September 11, 2000, the petitioner filed a brief raising the following ground for relief: "Did the lower court err by refusing to  direct a verdict of not guilty?"  (App. 339-352.)   On June 21, 2001, the South Carolina Court of Appeals affirmed the petitioner's conviction and sentence in State v. Dawson, Op. No. 2001UP-326 (S.C. Ct. App. filed June 21, 2001). (App. 374-377.)

On May 3, 2002, the petitioner filed an application for post-conviction relief ("PCR") raising the following issue: "Ineffective Assistance of Counsel during trial stage. Counsel was ineffective in trial presentation and failed to investigate background of state witnesses."  (App. 379.)  On June 16, 2003, a hearing was before the Honorable Edward P. Miller. (App. 387-416.)  The petitioner was present at the hearing and was represented by attorney Robert Lusk.  At the hearing, the petitioner testified on his own behalf.  At the conclusion of the hearing, Judge Miller orally denied relief. (App. 415-16.)   On July 3, 2003, he entered a written order denying relief. (App. 418-422.)

The petitioner filed an appeal from the denial of PCR to the South Carolina Supreme Court. He was represented by Appellate Defender Tara S. Taggart. On November 22, 2004, she filed a <u>Johnson</u>[4] petition raising the following issue: "Whether counsel was ineffective for failing to interview a critical witness (Melissa Hamilton)?" On January 4, 2005, the petitioner filed a pro se response raising the following issues:

    1. Lower court erred by refusing to direct a verdict of not guilty.

    2. Ineffective assistance of counsel for failing to inform petitioner of the preliminary hearing.

    3. Counsel was ineffective at the time of trial for failing to request a <u>King</u> charge.

    4. Failure to call alibi witness.

    5. Failure to interview state witness prior to trial.

    6. Misconduct on action of Detectives (Robert Crooks).

    7. Prosecutorial Misconduct by Clemson Police Department where police never had any physical evidence on Petitioner, but still arrested him.

On February 2, 2006, the Supreme Court of South Carolina denied the petition for writ of certiorari and granted counsel's request to be relieved. The remittitur was sent down on February 21, 2006.

On May 19, 2006, the petitioner filed a second PCR application raising the following grounds for relief:

    1. Invalid/Defected Indictment.

        A. Failure to full notice, violation of 6th and 14th Amend. of U.S. Const. And violation of § 17-19-20.

        B. Not raised before because newly discovered. § 16.

---

[4]<u>Johnson v. State</u>, 364 S.E.2d 201 (S.C. 1988).

2. Prosecutorial Misconduct by Clemson Police Department.

      A. Never afforded "lineup or Photo lineup" violation of 4th, 6th and 14th Amend. a denial of Due Process of the law.

      B. Not raised before because counsel was ineffective. § 16.

3. Prosecutorial Misconduct by Detective Robert F. Crooks.

      A. Gave false information to judge to obtain arrest warrant violation of 4th, 6th, 14th and 16th Amendments.

      B. Not raised before because counsel was ineffective. § 16.

4. A refusal on motion to direct verdict.

      A. There is no witnesses nor any evidence physical or direct that places applicant at the scene of the crime, before or after the crime.

On August 15, 2006, the Honorable G. Edward Welmaker filed a written conditional order dismissing the matter as successive and the issue relating to indictment without merit. On October 5, 2006, a final order of dismissal was filed. The petitioner did not appeal this denial of PCR.

## II.  FACTS

The following facts are set forth in the South Carolina Court of Appeals' unpublished opinion, State v. Dawson, Op. No. 2001UP-326 (S.C. Ct. App. filed June 21, 2001).

> On August 26, 1997, at approximately 10:00 p.m., two men robbed an Arby's restaurant while Michael Johnson, manager and owner, and two employees prepared to close the restaurant. Johnson testified that two black males, both wearing masks and one carrying a gun, entered the restaurant and demanded access to safe. Johnson led the robber with the gun to the safe located at the back of the restaurant. Unable to open the safe, Johnson instead gave the robbers $900 from his pocket and the remaining cash from the register. Johnson further testified that the entire robbery went quickly, lasting "maybe about a minute."
>
> Johnson described the man with the gun as around five feet ten inches tall, 170 pounds, wearing a ski mask, long and baggy blue shorts, and a blue shirt. He described the other man as around six feet tall and wearing a bandanna over his face.

4

Both employees offered similar descriptions of the robbers and events occurring during the robbery, but no one at Arby's saw the robbers' faces and they were unable to identify them.

Following the robbery, Johnson called the police. The police did not obtain any usable fingerprints from the restaurant, but a tracking dog led police to a footprint at the end of a trail behind the restaurant. An officer testified that the dog did not provide any useful information because the police could not determine what scent the dog followed.

Upon further investigation, the police learned that Jamie McDowell and Melissa Hamilton, employees of the Bojangles' restaurant located next door to the Arby's, observed Dawson and two other individuals parked in the Bogangles' parking lot around 10:00 p.m. on the evening of the robbery. McDowell explained that she and Dawson were friends, and Hamilton stated that she had known Dawson for approximately five years.

McDowell testified that around the time of the robbery she asked Hamilton to go to the store to buy her cigarettes. McDowell walked out of Bogangles' with Hamilton and saw a white car with tinted windows parked beside the trash dump in Bogangles' parking lot. McDowell saw two individuals in the car and a third person running behind the Bogangles' building. McDowell testified that the individual running behind the building wore long blue jean shorts and either a black or blue shirt and although she only observed the individual from the back, he "looked like Doug Dawson."[5] Upon returning to Bogangles' McDowell observed the white car leaving the parking lot at high speed.

Hamilton testified that she saw Dawson standing beside the white car and later runnng behind the restaurant. Hamilton stated she made eye contact with Dawson and that it was Dawson she saw that evening. Hamilton further testified that one of the men sitting in the car had a "black knitted something" in his hand which appeared to be a hat or a stocking cap. When Hamilton returned from the store, she observed the white car leaving the Bogangles' parking lot. She testified that she did not report these events to the police immediately because she did not realize she had been a witness to a crime.

On September 4, 1997, police arrested Dawson, who fit the height and weight description of the armed robber. At the time of the arrest, Dawson's clothing

---

[5]Although McDowell originally identified the man she saw running behind the restaurant as Kevin Jenkins, she later admitted making up the name Kevin Jenkins and that she actually saw Doug Dawson that night. McDowell admitted to lying about the identity because: "I didn't want to have nothing to do with it. I didn't want to really say who I thought it was."

resembled that worn by the robber.  The court admitted this clothing into evidence.

At the close of the State's case, the court denied Dawson's request for a directed verdict, and the jury found him guilty of armed robbery. . . .

(App. 374-377.)

## III. PETITIONER'S GROUNDS FOR RELIEF

On January 22, 2008,  the petitioner filed an amended habeas petitioner raising the following

grounds, verbatim:

**Ground One:**  Invalid/Defected Indictment

**Supporting Facts:**  There are no statutes on the face or body of the indictment therefore the indictment is defected and fails to give "full" notice of the charge.  It's missing the elements that distinguish "Armed Robbery" from "Strong Armed Robbery."

**Ground Two:**  Prosecutorial Misconduct by Clemson Police Dep.

**Supporting Facts:** They never staged any line-up or even offered any photo line-up for the state "eye" witness to view.  They never had the witness give any description of petitioner other than "short and bald."  The witnesses never once said what color/nationality the petitioner was.  She only gave petitioner's name as "Doug Dawson." Petitioner's father also goes by the name of  "Doug Dawson" so how the police know who the witness is talking about when petitioner's father who is also "short and bald" and goes by the name of "Doug Dawson."  How can the police know which "Doug Dawson" the witness is meaning when there was no line-ups or photo-lineups staged or description giving?

**Ground Three:**  Prosecutorial Misconduct by Detective Robert Crooks

**Supporting Facts:**  Det. Crooks lied and said they (Clemson Police Dep.) had a eyewitness to this crime.  He lied to judge "G.M. Burns" so he could get an arrest warrant for the petitioner.  He also lied in the warrant saying a good citizen provided him with the information about the incident, but the witness testified she never witness the petitioner commit any crime as Detective Crooks said she did. She testified that she read of the crime days later in the newspaper.

**Ground Four:** A refusel on a Motion to "Direct a Verdict"

6

**Supporting Facts:** There is no "eye witness" or any witness of any kind nor any evidence physical, circumstantial, or direct that places petitioner at the scene of the crime before, during, or after the crime. There was no witness that witness anyone commit this crime.

**Ground Five:** Ineffective Assistance of Counsel During Trial Stage

**Supporting Facts:** Counsel never once before the trial interview the State witness (Melisa Hamilton), counsel never even called alibi witness to the stand which was a critical part of petitioner's defense!! Counsel never informed petitioner of the preliminary hearing, nor did counsel ever share with the petitioner any discovery (Rule 5). and during the trial after counsel made a motion that there be no in-court identification, the solicitor still had witnesses McDowell and Hamilton to identify petitioner during trial and counsel never even "objected" when he made the motion days before not to have this happen.

**Ground Six:** Failure to Charge the Jury on Lesser Included Offense

**Supporting Facts:** With the absence of any evidence and no "eye" witnesses or any witnesses that could put the petitioner in or at the scene before, during, or after the crime, and the only thing close to a witness puts petitioner in a car with other unknown people. Then this witness testified that she saw petitioner leave the car (before the crime) going in the opposite direction from the crime. More than one verdict could have been rendered, the jury should have been charged on a lesser included offense.

(Am. Pet. 6-18.)

## IV.  SUMMARY JUDGMENT

As stated above, on January 18, 2007, the respondent filed an amended return and memorandum of law in support of his second motion for summary judgment and petitioner filed a response in opposition on February 19, 2008.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction

does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In Celotex, the Court held the defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner had failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

## V. STANDARD OF REVIEW

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254. Under § 2254(d),

8

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

As "a determination of a factual issue made by a State court shall be presumed to be correct," a petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). With respect to reviewing the state court's application of federal law, " '[a] federal habeas court may grant the writ if the state court identifies the correct governing principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)).  Further, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." Id.  "Thus, to grant [a] habeas petition, [the court] must conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." McHone v. Polk, 392 F.3d 691, 719 (4th Cir. 2004).

## VI. DISCUSSION AS TO PROCEDURAL BAR

### A. Procedural Bar

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories

rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

### 1. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B) (I) there is either an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is

clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 207; Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977); Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983).

## 2. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal

11

habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.  Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim.  Murray v. Carrier, 477 U.S. 478, 496 (1986).

3. Inter-relation of Exhaustion and Procedural Bypass

12

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997)(*citing* Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991); Teague v. Lane, 489 U.S. 288,297-98 (1989); and George v. Angelone, 100 F.3d 353,363 (4th Cir. 1996).

### 4. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, Coleman v. Thompson, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. Murray v. Carrier, 477 U.S. 478 (1986). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* at 478.

Absent a showing of "cause," the court is not required to consider "actual prejudice." Turner v. Jabe, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. Murray v. Carrier, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that

specific errors infected the trial and were of constitutional dimensions. United States v. Frady, 456 U.S. 152 (1982).

In Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. See Karsten v. Kaiser Foundation Health Plan, 36 F.3d 8, 11 (4th Cir. 1993). Therefore, once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

## VII.  DISCUSSION[6]

### A.  Ground One

---

[6]The undersigned also notes that this petition appears to be untimely.  Pursuant to 28 U.S.C. § 2244, the petitioner had one year from when his conviction became final to file a habeas petition. Further, the statute of limitations for filing a habeas action is tolled during the period that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The petitioner's conviction became final on June 21, 2001, when the South Carolina Court of Appeals affirmed his conviction concluding his direct appeal.  The petitioner filed his first PCR on April 16, 2002, after 298 days had passed.  The filing of this PCR tolled the statute of limitations while it was pending in the state courts.  On February 21, 2006, the South Carolina Supreme Court sent down its remittitur after denying the petition for writ of certiorari to review the denial of PCR concluding the petitioner's PCR action.  Therefore, the clock began to run again on February 22, 2006.  The petitioner's second and untimely PCR application filed on May 19, 2006, however, did not toll the AEDPA statute of limitations.  A State PCR proceeding must be "properly filed" for the statutory tolling provisions of § 2244(d)(2) to apply. When a PCR application is untimely under state law, it is not considered "properly filed." Pace v. DiGulielmo, 544 U.S. 408, 414 (2005) (quoting Carey v. Saffold, 536 U.S. 214, 236 (2002).  Thus, the clock continued to run until the petitioner filed this habeas action on November 8, 2006.  At that point another 258 days had passed.  A total of 556 days lapsed before the petitioner filed this action - 191 days too late.

In Ground One, the petitioner alleges that the indictment was invalid and defective because it did not cite a statute and it failed to distinguish between armed robbery and strong armed robbery thereby denying him notice. (Pet'r's Mem. Opp. Summ. J. Mot. at 5.) The respondent contends this issue is procedurally defaulted. The undersigned agrees.

The petitioner did not raise this issue in his direct appeal or in his first PCR proceeding. Since the petitioner could have raised this allegation on direct appeal or in his first PCR application, he cannot assert this ground for the first time in a federal habeas corpus petition. Matthews, 105 F.3d at 916-17; Murray v. Carrier, 477 U.S. 478 (1986). Thus, this issue is barred from habeas review. Coleman v. Thompson, 501 U.S. 722 (1991). Further, the petitioner has not presented or argued sufficient cause and actual prejudice to overcome the procedural default in his response to the respondent's motion for summary judgment.[7] As previously discussed, it is the petitioner's burden to raise cause and prejudice or actual innocence. A court need not consider cause and prejudice or actual innocence if not asserted by the petitioner. Burket v. Angelone, 208 F.3d 172, 183 n. 10 (4th Cir. 2000). Accordingly, this ground should be dismissed.

In any event, even construing the petition liberally, as the court is required to do in complaints filed by pro se litigants, and finding that the petitioner raises a federal due process claim in this ground, the issue still should be dismissed. Deficiencies in state court indictments "are not

---

[7]Further, the undersigned notes that to the extent the petitioner now blames his PCR counsel for this default, (Pet'r's Mem. Opp. Summ. J. Mot. at 5), that would not provide cause to excuse the default as he does not have a constitutional right to effective assistance of PCR counsel. Coleman v. Thompson, 501 U.S. 722, 752 (1991) (rejecting finding cause to excuse default on ineffective assistance of counsel where no constitutional guarantee of effective assistance existed); Mackall v. Angelone, 131 F.3d 442, 448 (4th Cir.1997) ("in order to constitute cause, attorney error must amount to constitutionally ineffective assistance of counsel and that this standard could not be satisfied in the absence of a constitutional right to counsel").

ordinarily a basis for federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process." Ashford v. Edwards, 780 F.2d 405, 407 (4th Cir.1985). The petitioner has not shown any deficiency in his indictment based on theses issues which made his trial so egregiously unfair as to amount to a deprivation of any federal right. *Id.* Additionally, claims arising from state law are not cognizable. *See* Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Accordingly, this claim should be dismissed.

### B. Ground Two

In Ground Two, the petitioner alleges he was subjected to "prosecutorial misconduct" by the Clemson Police because they did not conduct any lineups with the witnesses prior to trial violating his Sixth and Fourteenth Amendment rights. (Pet'r's Mem. Opp. Summ. J. Mot. at 5.) The respondent contends this issue is also procedurally barred from federal habeas review. The undersigned agrees.

The petitioner did not raise this issue on direct appeal. During his first PCR hearing, the petitioner raised this issue. (App. 400-401.) However, the PCR Court did not rule on this issue and the petitioner did not file a Rule 59(e), SCRCP, motion seeking a ruling on it. Further, although the petitioner raised this issue in his second PCR, the petitioner's second PCR was found to be successive. Since the petitioner could have raised this allegation on direct appeal or in his first PCR application, he cannot assert this ground for the first time in a federal habeas corpus petition. Matthews, 105 F.3d at 916-17; Murray v. Carrier, 477 U.S. 478 (1986). Further, the petitioner has not presented or argued sufficient cause and actual prejudice to overcome the procedural default in his response to respondents' motion for summary judgment. Accordingly, this claim is procedurally barred.

In any event, as the respondent points out, criminal defendants have no constitutional right to a "full line-up." United States v. Jones, 495 F.2d 1370 (4th Cir.1974) ( "[A] defendant has no enforceable right to a line-up, even if the request is timely made."); United States v. White, 482 F.2d 485, 488 (4th Cir.1973) ( "There is no authority to support a contention that a defendant has a legal right to a line-up, if he requests it."); Doss v. Corr. Dep't Unit # 24, 396 F.Supp. 806, 807 (W.D.Va.1975) ("A person has no right to be placed in a line-up."). Citing several cases, the petitioner correctly argues that a lineup must be conducted in a fundamentally fair manner. (Pet'r's Mem. Opp. Summ. J. Mot. at 6.)[8] However, the petitioner was never involved in a line-up. Because the petitioner was not entitled to a line-up and none were conducted, these cases do not apply. Thus, this ground should be dismissed.

### C. Ground Three

In Ground Three, the petitioner alleges the police committed "prosecutorial" misconduct when Detective Crooks lied to the magistrate when obtaining the arrest warrant and told him that they had an eyewitness. The petitioner did not raise this issue on direct appeal or in his first PCR.[9] Although the petitioner raised this issue in his second PCR, the petitioner's second PCR was found to be successive. Coleman, 501 U.S. at 750. Since the petitioner could have raised this allegation on direct appeal or in his first PCR application, he cannot assert this ground for the first time in a

---

[8]Manson v. Brathwaite, 432 U.S. 98 (U.S. 1977("Where their Sixth Amendment holding did not apply, Stovall found an analogous Fourteenth Amendment right to a lineup conducted in a fundamentally fair manner.")(citing Stovall v. Denno, 388 U.S. 293(1967)).

[9]The petitioner contends he raised this in his first PCR. However, reviewing the page he cites in the record (App. 409), trial counsel merely refers to a possible issue with the search warrant. (Pet'r's Mem. Opp. Summ. J. Mot. at 8.) The petitioner did not raise this issue as a ground for PCR. Further, even if he did raise it during the hearing, the PCR Court did not rule on this issue and the petitioner did not move pursuant to Rule 59(e), SCRCP, for such a ruling.

federal habeas corpus petition.  Matthews, 105 F.3d at 916-17; Murray v. Carrier, 477 U.S. 478 (1986).  Further, the petitioner has not presented or argued sufficient cause and actual prejudice to overcome the procedural default in his response to respondents' motion for summary judgment. Accordingly, this claim should be dismissed.

### D.  Ground Four

In Ground Four, the petitioner contends that the trial court erred by failing grant his motion for directed verdict "when there was no eyewitness, no physical, or no direct evidence tying the Petitioner to this crime.  (Pet'r's Mem. Opp. Summ. J. at 8.)  The petitioner raised this issue in his direct appeal to the South Carolina Court of Appeals. (App. 375-377.)  In State v. Dawson, Op. No. 2001-UP326 (S.C. Ct. App. filed June 21, 2001), the court held that "the state's case against Dawson relies primarily upon circumstantial evidence and we find substantial circumstantial evidence exists from which a jury could logically deduce Dawson's guilt." (App. 376-77.)  The respondent contends this claim fails on the merits.  The undersigned agrees.

A directed verdict is appropriate only when the prosecution presents no evidence whatsoever of one or more elements of the charged offense.  State v. McCluney, 606 S.E.2d 485, 486 (S.C. 2004); State v. McLauren, 563 S.E.2d 346, 351 (S.C. 2002).  The trial court may not weigh the sufficiency of the evidence.  McLauren, 563 S.E.2d at 351.  In other words, if the prosecution has presented any evidence of the elements of the charged offense, whether or not the petitioner or his attorney thinks that evidence is credible, the case will survive a motion for directed verdict.

This claim goes to the sufficiency of the evidence.  While such a claim is cognizable on collateral review, a federal court's review of such claims is "sharply limited." Wilson v. Greene, 155 F.3d 396, 405 (4th Cir.1998) (1998) (*quoting* Wright v. West, 505 U.S. 277, 296 (1992)); see also

18

Evans-Smith v. Taylor, 19 F.3d 899, 905 (4th Cir.1994)("The standard is obviously rigorous.") "Federal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review." Wilson, 155 F.3d at 405-406 (citing Wright, 505 U.S. at 292).

The undersigned can find no reversible error in the trial judge's refusal to grant a directed verdict on this claim based on the testimony and evidence in the record. Johnson, the Arby's employee, described the man with the gun as around five feet ten inches tall and 170 pounds (App. 48), which matches the petitioner's build. Additionally, the other two Arby's employees also described the robber with the gun as approximately five feet ten inches weighing 165-170 pounds. (App. 89-90, 96, 102.) All three Arby's employees also stated he was wearing a dark shirt, long blue jean shorts, and a ski mask. (*Id*.)

The petitioner was seen in the Bojangles' parking lot adjacent to the Arby's restaurant on the night of the robbery and within the time frame of the robbery wearing blue jean shorts below the knee and a blue or black tee shirt, the same clothing that the witnesses had described the man with the gun as wearing. The Bogangles' employees, McDowell and Hamilton, positively identified the petitioner as having been in the Bogangles' parking lot at 10:00. McDowell testified that she and Dawson were friends and the individual she saw "looked like Doug Dawson." (App. 235, 236.) Hamilton stated that she had known Dawson for approximately five years and she positively identified the petitioner as the individual she saw that night. (App. 245, 267.) Hamilton testified that she looked him in the face and made eye contact. (App. 251, 252, 261.) She testified she had no doubt it was the petitioner. (App. 252.) Further, when he was arrested, the petitioner's clothing matched the description of the robber's clothing. Based upon the evidence and the testimony, the

19

undersigned finds that the state court's decisions were not contrary to, nor involved an unreasonable application of, clearly established Federal law nor based on an unreasonable determination of the facts in light of the State court proceedings. Accordingly, this claim should be dismissed.

### E. Ground Five

In Ground Five, the petitioner contends that trial counsel was ineffective for several reasons. He contends trial counsel failed to interview one of the State's witnesses, Melissa Hamilton, prior to trial; failed to called an alibi witness; failed to inform the petitioner of the preliminary hearing; failed to share with the petitioner any discovery; and failed to object to in-court identifications made by two witnesses, McDowell and Hamilton.

In his PCR proceeding, the petitioner alleged trial counsel was ineffective based only on trial counsel's failure to call alibi witnesses, to fully inform him about the case, and to interview Melissa Hamilton prior to trial. Thus, the remaining allegations of ineffective assistance of counsel are procedurally barred. Coleman, 501 U.S. at 750. Further, the petitioner has not presented or argued sufficient cause and actual prejudice to overcome the procedural default in his response to respondent's motion for summary judgment.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Id. at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. Id. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors were so serious as

to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364 (1993).

The PCR court found trial counsel was not ineffective  The PCR Court  found the petitioner's testimony not credible and trial counsel's testimony credible. (App. 419-422.)  Further, the PCR Court found that trial counsel had articulated valid and reasonable strategic reasons for his actions. The PCR Court determined that counsel's testimony was credible and that he had received discovery and gone over the information with his client.  The PCR court found trial counsel's testimony credible when he testified that he was certain that he notified the petitioner about the preliminary hearing. (App. 405-406.)   The PCR Court's finding that trial counsel's testimony was credible on this issue is entitled to a presumption of correctness.

At the PCR hearing, trial counsel testified that he did attend the petitioner's preliminary hearing and  he filed for discovery in every case.  Trial counsel further stated that he went through all the information and evidence with the petitioner and that he was aware of the available witnesses. The record supports the PCR Court's conclusions. First, trial counsel testified that he made and shared copies of the file with the petitioner prior to trial. (App. 406-407.)  He stated that he looked at every witness and gave the petitioner copies of every statement. (App. 407.)

In regard to Hamilton, trial counsel testified that he believed it was their best course of action to try to undermine her on the stand without giving her warning or preparation. The PCR court opined that it was a valid and reasonable strategic reason to not hold a pre-trial interview because it would have given the witness and the state prior notice of his intended attack for trial (App. 420-421.) Further, trial counsel testified that he went over Hamilton's statement with the petitioner who told him that he had met her one time before at a club and that she had been in trouble with the

law.  He also stated that she had been offered reward money and that her statement was not given until nine days after the incident. (App. 410.)  Trial counsel stated that he did not interview her prior to trial and could not recall why. (App. 410-411.)

At trial, trial counsel throughly cross-examined Hamilton. (App. 255-270.)  She stated that she made the statement nine days after the incident (App. 259) and she denied talking to anyone in the Clemson Police Department three-four days after the incident.  She also denied that she learned about the financial reward from Officer Crooks after she gave the statement.  (App. 262-263.)  Trial counsel pointed out inconsistencies in Hamilton's trial testimony. (App. 263-64.)  Although she admitted not knowing the petitioner very well, she testified that she had seen him more than once. (App. 266-67.)  She also denied that the police had told her to put down the petitioner's name in her statement.  (App. 269.)    The PCR Court reasonably concluded that trial counsel was not deficient in failing to interview then witness prior to trial.  Furthermore, the petitioner has not shown any prejudice.

The petitioner also asserts that trial counsel was ineffective for failing to call an alibi witness. At the PCR hearing, trial counsel testified that he recalled interviewing people that the petitioner brought to the office.  (App. 412.)  Trial counsel testified that after his investigation, that he recommended that the petitioner not  put up a defense in the case.  (App. 412.)  Trial counsel stated that it was the petitioner who decided not to put up any defense so that he would have the last closing argument.  (App. 412-13.)  At the PCR hearing, the petitioner did not present any alibi witnesses. The petitioner is merely speculating that the such a witness would have aided in his defense. *See* Palacio v. State, 511 S.E.2d 62, 66 (S.C. 1999) (finding that where contents of challenged documents were not presented at the PCR hearing, defendant failed to present any evidence of probative value

22

demonstrating how counsel's failure to obtain the unproduced documents in a more timely fashion prejudiced his defense); <u>Porter v. State</u>, 629 S.E.2d 353, 358 (S.C. 2006) (holding "[m]ere speculation of what a witness' testimony may be is insufficient to satisfy the burden of showing prejudice in a petition for PCR."); <u>Dempsey v. State</u>, 610 S.E.2d 812, 814 (S.C. 2005) (holding "[a] PCR applicant cannot show that he was prejudiced by counsel's failure to call a favorable witness to testify at trial if that witness does not later testify at the PCR hearing or otherwise offer testimony within the rules of evidence."). As the PCR court's rejection of the ineffective assistance of counsel ground for relief did not result in an unreasonable application of <u>Strickland</u> and was not based upon an unreasonable determination of facts in light of the state court record, this ground is without merit. Accordingly, this claim should be dismissed.

### F.  Ground Six

In Ground Six, the petitioner contends that the trial court erred by failing to charge a lesser included offense.  This issue was not raised at trial, on direct appeal, or in the petitioner's PCR proceedings.  Accordingly, this claim is procedurally barred.  <u>Coleman</u>, 501 U.S. at 750.  Further, the petitioner has not presented or argued sufficient cause and actual prejudice to overcome the procedural default in his response to respondent's motion for summary judgment.

In any event the petitioner was not entitled to a charge on a lesser included offense.  He argues he did not commit the robbery and was not present at the Arby's that night.  The petitioner did not present any evidence that he committed some act that could be viewed by the jury as a simple robbery or common law robbery.  Therefore, the petitioner was not entitled to a jury charge on any lesser included offense. *See, e.g.,* <u>State v. Drayton</u>, 361 S.E.2d 329 (S.C. 1987)( holding defendant not entitled to robbery charge as a lesser included offense of armed robbery where, under State's

version of the facts, the defendant was guilty of armed robbery, and, under defendant's version of the facts, defendant was innocent of any robbery charge).   Accordingly, this claim should be dismissed.

## VIII. CONCLUSION

Based on the foregoing, it is recommended that respondent's motion for summary judgment (docket entry # 39) be GRANTED and the petitioner's Petition for Writ of Habeas Corpus should be denied, and the petition dismissed without an evidentiary hearing.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

April 3, 2008
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**