IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

RECEIVED
DC. CLERK, CHARLESTON, S'
2008 AUG 13 P

William Douglas Dawson, )
)
    Petitioner, )
)
v. )
)
Warden Stan Burtt, Lieber )
Correctional Institution, )
)
    Respondent. )
_____)

Civil Action No. 4:06-3205

<u>ORDER</u>



This matter is before the Court upon Petitioner William Douglas Dawson's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In accordance with 28 U.S.C. § 636(b)(1)(B), this matter was referred to a United States Magistrate Judge for a Report and Recommendation ("R&R"). In the R&R, Magistrate Judge Thomas E. Rogers, III recommends that the Court grant the Respondent's motion for summary judgment and deny the Petitioner's § 2254 petition. The Petitioner filed timely objections to the R&R, and the matter is ripe for review. See 28 U.S.C. § 636(b)(1) (stating that a party may object, in writing, to an R&R within ten days after being served with a copy of that report).

## **BACKGROUND**

### I.   Procedural History

The Petitioner is currently confined in the Lieber Correctional Institution of the South Carolina Department of Corrections. In October of 1997, the Petitioner was indicted for armed robbery, and on March 17-18, 1998, the Petitioner, who was represented by Robert S. Dover, proceeded to a jury trial before the Honorable Thomas J. Ervin. The jury found the Petitioner guilty, and Judge Ervin sentenced him to thirty years of imprisonment.

The Petitioner filed a timely notice of appeal, and Appellate Defender Aileen Clare represented the Petitioner on appeal. On September 11, 2000, the Petitioner filed an initial brief raising the following ground for relief: "Did the lower court err by refusing to direct a verdict of not guilty?" On June 21, 2002, the South Carolina Court of Appeals affirmed the Petitioner's conviction and sentence. State v. Dawson, 2001-UP-326 (2001).

On May 3, 2002, the Petitioner filed an application for post-conviction relief ("PCR") alleging ineffective assistance of counsel during the trial stage. More specifically, the Petitioner alleged that his trial counsel was ineffective in trial presentation and failed to investigate the backgrounds of state witnesses. The Petitioner, who was represented by Robert Lusk, testified on his own behalf at a hearing before the Honorable Edward P. Miller. On July 2, 2003, Judge Miller entered a written order denying the Petitioner relief.

The Petitioner timely appealed the denial of his PCR application to the South Carolina Supreme Court. On appeal, Appellate Defender Tara S. Taggart represented the Petitioner. On November 4, 2004, Taggart filed a Johnson petition for a writ of certiorari and a request to be relieved as counsel. Johnson v. State, 364 S.E.2d 201 (S.C. 1988). The Johnson petition raised the following issue: "Whether counsel was ineffective for failing to interview a critical witness (Melissa Hamilton)?" Also, on January 4, 2005, the Petitioner filed a pro se response raising the following issues:

1. Lower court erred by refusing to direct a verdict of not guilty.

2. Ineffective assistance of counsel for failing to inform petitioner of the preliminary hearing.



3. Counsel was ineffective at the time of trial for failing to request a King charge.

4. Failure to call alibi witness.

2

5. Failure to interview state witness prior to trial.

6. Misconduct on action of Detectives (Robert Crooks).

7. Prosecutorial Misconduct by Clemson Police Department where police never had any physical evidence on Petitioner, but still arrested him.

On February 2, 2006, the Supreme Court of South Carolina denied the petition for a writ of certiorari and granted counsel's request to be relieved. The remittitur was sent down on February 21, 2006.

On May 19, 2006, the Petitioner filed a second PCR application raising the following grounds for relief:

1. Invalid/Defected Indictment.
   A. Failure to full notice, violation of 6th and 14th Amend. of U.S. Const. And violation of § 17-19-20.
   B. Not raised before because newly discovered evidence. § 16.

2. Prosecutorial Misconduct by Clemson Police Department.
   A. Never afforded "lineup or Photo lineup" violation of 4th, 6th, and 14th Amend. a denial of Due Process of the law.
   B. Not raised before because counsel was ineffective. § 16.

3. Prosecutorial Misconduct by Detective Robert F. Crooks.
   A. Gave false information to judge to obtain arrest warrant violation of 4th, 6th, 14th, and 16th Amendments.
   B. Not raised before because counsel was ineffective. § 16.

4. A refusal on motion to direct verdict.
   A. There is no witnesses nor any evidence physical or direct that places applicant at the scene of the crime, before or after the crime.

On August 15, 2006, the Honorable G. Edward Welmaker filed a written "Conditional Order of Dismissal." In the Order, Judge Welmaker dismissed the matter as untimely and successive and found the Petitioner's challenge to the indictment to be without merit. On October 5, 2006, a Final Order of Dismissal was filed; the Petitioner did not appeal this

3

denial.

On November 14, 2006, the Petitioner filed the present § 2254 petition. Subsequently, on April 9, 2007, the Respondent filed a motion for summary judgment. In response to the motion for summary judgment, the Petitioner filed a motion for relief by default, which the Court denied on August 6, 2007. Thereafter, on December 14, 2007, the Petitioner filed an amended § 2254 petition alleging the following grounds for relief, taken verbatim from the petition:

> **GROUND ONE:** Invalid/Defective Indictment
>
> Supporting facts: There are no statutes on the face or body of the indictment therefore the indictment is defected and fails to give full notice of the charge. It's missing the elements that distinguish "Arm Robbery" from "Strong Armed Robbery."
>
> **GROUND TWO:** Prosecutorial Misconduct by Clemson Police Dep.
>
> Supporting facts: They never staged any line-ups or even offered any photo line-ups for the state "eye" witness to view. They never had the witness give any description of petitioner other than "short and bald." The witness never once said what color/nationality the petitioner was. She only gave petitioner's name "Doug Dawson." Petitioner's father also goes by the name of "Doug Dawson" so how can the police know who the witness is talking about when petitioner's father who is also "short and bald" and goes by the name of "Doug Dawson." How can police know which "Doug Dawson" the witness means when there was no line-ups or photo line-ups staged or description giving?
>
> **GROUND THREE:** Prosecutorial Misconduct by Detective Robert Crooks
>
> Supporting facts: Det. Crooks lied and said they (Clemson Police Dep.) had a eye witness to this crime. He lied to judge "G.M. Burns" so he could get an arrest warrant for the petitioner. He also lied in the warrant saying a good

4

                              citizen provided him with the information about the incident, but the witness testified she never witness the petitioner commit any crime as Det. Crook said she did. She testified that she read of the crime days later in the newspaper.

**GROUND FOUR:**    A Refusa[]l on a Motion to "Direct a Verdict"

Supporting facts:    There is no "eye witness" or any witness of any kind nor any evidence physical, circumstantial, or direct that places petitioner at the scene of the crime before, during, or after the crime. There was no witness that witness anyone commit this crime.

**GROUND FIVE:**    Ineffective Assistance of Counsel during Trial Stage

Supporting facts:    Counsel never once before the trial interview the state witness (Melissa Hamilton), counsel never even called alibi witness to the stand which was a critical part of petitioner's defense!! Counsel never informed petitioner of the preliminary hearing, nor did counsel ever share with petitioner any discovery (Rule 5), and during the trial after made a motion that there be no in-court identification, the solicitor still had the witnesses McDowell and Hamilton to identify petitioner during trial and counsel never even "objected" when he made motions days before not to have this happen.

**GROUND SIX:**    Failure to Charge the Jury on Lesser Included Offense

Supporting facts:    With the lack of any evidence and no "eye" witnesses, or any witnesses that could put the petitioner in or at the scene before, during, or after the crime, and the only thing close to a witness puts petitioner in a car with other unknown people. Then this witness testified that she saw petitioner leave the car (before the crime) going in the opposite direction from the crime. More than on[e] Verdict could have been rendered, the jury should should [] have been charge on a lesser included offense.

On January 18, 2008, the Respondent filed a second motion for summary judgment. The Magistrate Judge issued a <u>Roseboro</u> order on January 22, 2008, advising the Petitioner

of the procedure relating to a motion for summary judgment. The Petitioner filed a response to the motion for summary judgment on February 19, 2008. On April 3, 2008, the Magistrate Judge issued an R&R, recommending that the Court grant the Respondent's motion for summary judgment. The Petitioner filed timely written objections to the R&R, and the matter is ripe for review.

## II.     Facts

The following is set forth in the South Carolina Court of Appeals' unpublished opinion, State v. Dawson, Op. No. 2001UP-326 (S.C. Ct. App. June 21, 2001):

> On August 26, 1997, at approximately 10:00 p.m., two men robbed an Arby's restaurant while Michael Johnson, manager and owner, and two employees prepared to close the restaurant. Johnson testified that two black males, both wearing masks and one carrying a gun, entered the restaurant and demanded access to the safe. Johnson led the robber with the gun to the safe located at the back of the restaurant. Unable to open the safe, Johnson instead gave the robbers $900 from his pocket and the remaining cash from the register. Johnson further testified that the entire robbery went quickly, lasting "maybe about a minute."
>
> Johnson described the man with the gun as around five feet ten inches tall, 170 pounds, wearing a ski mask, long and baggy blue shorts, and a blue shirt. He described the other man as around six feet tall and wearing a bandana over his face. Both employees offered similar descriptions of the robbers and events occurring during the robbery, but no one at Arby's saw the robbers' faces and they were unable to identify them.
>
> Following the robbery, Johnson called the police. The police did not obtain any usable fingerprints from the restaurant, but a tracking dog led police to a footprint at the end of a trail behind the restaurant. An officer testified that the dog did not provide any useful information because the police could not determine what scent the dog followed.
>
> Upon further investigation, the police learned that Jamie McDowell and Melissa Hamilton, employees of the Bojangles' restaurant located next door to the Arby's, observed Dawson and two other individuals parked in the Bojangles' parking lot around 10:00 p.m. on the evening of the robbery. McDowell explained that she and Dawson were friends, and Hamilton stated that she had known Dawson for approximately five years.

6

McDowell testified that around the time of the robbery she asked Hamilton to go to the store to buy her cigarettes. McDowell walked out of Bojangles' with Hamilton and saw a white car with tinted windows parked beside the trash dump in Bojangles' parking lot. McDowell saw two individuals in the car and a third person running behind the Bojangles' building. McDowell testified that the individual running behind the building wore long blue jean shorts and either a black or blue shirt and although she only observed the individual from the back, he "looked like Doug Dawson."[1] Upon returning to the Bojangles' McDowell observed the white car leaving the parking lot at high speed.

Hamilton testified that she saw Dawson standing beside the white car and later running behind the restaurant. Hamilton stated that she made eye contact with Dawson and that it was Dawson she saw that evening. Hamilton further testified that one of the men sitting in the car had a "black knitted something" in his hand which appeared to be a hat or a stocking cap. When Hamilton returned from the store, she observed the white car leaving the Bojangles' parking lot. She testified that she did not report these events to the police immediately because she did not realize she had been a witness to a crime.

On September 4, 1997, police arrested Dawson, who fit the height and weight description of the armed robber. At the time of the arrest, Dawson's clothing resembled that worn by the robber. The court admitted this clothing into evidence.

At the close of the State's case, the court denied Dawson's request for a directed verdict, and the jury found him guilty of armed robbery. . . .

(App. at 374-77.)

## STANDARD OF REVIEW

I. **Legal Standard for Summary Judgment**

Summary judgment is proper if "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). If so, "the moving party is entitled to a judgment as a matter of law."

---

[1] Although McDowell originally identified the man she saw running behind the restaurant as Kevin Jenkins, she later admitted making up the name Kevin Jenkins and said that she actually saw Doug Dawson that night. McDowell admitted to lying about the identity because: "I didn't want to have nothing to do with it. I didn't want to really say who I thought it was."

*Id.* Summary judgment should not be viewed as "a disfavored procedural shortcut, but rather as an integral part of the Federal Rules." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Further, if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then summary judgment is proper. Id. at 322. All evidence "must be viewed in the light most favorable to the party opposing the motion." U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).

## II.    The Magistrate Judge's R&R

The Court is charged with conducting a *de novo* review of any portion of the R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R. 28 U.S.C. § 636(b)(1). Any written objection must specifically identify the portions of the R&R to which such objection is made and the basis for such objection. Id. After a review of the entire record, including the R&R and the Petitioner's objections, the Court finds that the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the Court adopts the R&R and grants the Respondent's motion for summary judgment.

## DISCUSSION

## I.    The AEDPA's Statute of Limitations

As a preliminary matter (and as the Magistrate Judge noted in footnote 6 of the R&R), the Petitioner's § 2254 petition appears to be untimely. Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), as amended in 1996, a one-year period of limitation applies to an application for "a writ of habeas corpus by a person in

custody pursuant to the judgment of a state court." 28 U.S.C. § 2244(d)(1). The limitation period for filing a § 2254 petition concerning a specific state court judgment begins to run from the latest of four possible dates:

- (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

- (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

- (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

- (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A-D). Additionally, § 2244(d)(2) provides that its one-year limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). "[U]nder § 2244(d)(2) the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review), is tolled from the limitations period for federal habeas corpus petitioners . . . ." Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999).

Further, an "application is *properly filed* when its delivery and acceptance are in compliance with the applicable laws and rules governing filings . . . for example, the form of the document, the time limits upon its delivery, the court and office in which it must be

9

lodged, and the requisite filing fee." Artuz v. Bennett, 531 U.S. 4 (2000) (emphasis added). Under South Carolina law, a PCR application must be filed "within one year after the entry of a judgment of conviction or within one year after the sending of the remittitur to the lower court from an appeal or the filing of the final decision upon an appeal, whichever is later." S.C. Code Ann. § 17-27-45

Here, the Petitioner's conviction became final on June 21, 2001, when the South Carolina Court of Appeals affirmed his conviction, concluding his direct appeal. Absent any tolling, the Petitioner's limitations period for filing a § 2254 petition would have expired on June 22, 2002. However, on April 16, 2002, some 298 days after his conviction became final, the Petitioner filed his first "properly filed" PCR application, tolling the limitations period until February 21, 2006, when the South Carolina Supreme Court sent down its remittitur. Thus, the Petitioner's limitations period began to run again on February 22, 2006. Approximately 86 days later, on May 19, 2006, the Petitioner filed a second PCR application, which was dismissed as untimely and successive. Because it was dismissed as untimely and successive, this section PCR application was not "properly filed" and therefore did not toll the limitations period.[2] The Petitioner's clock continued to run until he filed the present action on November 8, 2006, 258 days after the conclusion of his first PCR application. Thus, it appears that a total of 556 days passed before the Petitioner

---

[2] Nevertheless, even had the Petitioner's second PCR application been "properly filed," more than 365 days already had passed before its filing. Specifically, 298 days passed before the Petitioner filed his first PCR application, and another 86 days passed between the conclusion of his first PCR application and the filing of his second PCR application. This time alone amounts to 384 days, more than one year.

filed the present action, rendering it untimely.[3]

Although the Magistrate Judge noted that the present petition appeared to be untimely, he did not end his analysis there. Rather, because the issue of timeliness had not been squarely addressed by the Respondent or the Petitioner, the Magistrate Judge proceeded to consider the merits of the Petitioner's six grounds for relief. Likewise, although the Court believes that the present § 2254 petition is untimely, the Court will consider the merits of the Petitioner's grounds for relief in evaluating the Petitioner's objections to the R&R.[4]

## II.  The Petitioner's Grounds for Relief

### Ground One: Defective/Invalid Indictment

In the Petitioner's first ground, he alleges that the indictment was defective because it did not cite a statute and failed to distinguish between armed robbery and strong armed robbery, thereby denying him notice. In the R&R, the Magistrate Judge agreed with the

---

[3] In his objections, the Petitioner asserts that his petition is timely because the South Carolina Supreme Court did not deny his petition for a writ of certiorari (regarding his first PCR application) until February 21, 2006. What the Petitioner fails to understand, however, is that the application of the one-year period of limitations begins to run on the date on which his judgment and conviction became final, not the date on which his first PCR application became final. 28 U.S.C.A. § 2244. Here, the Petitioner's conviction became final on June 21, 2001, and he did not file his first PCR application until April 16, 2002, some 298 days later. The period of limitations was tolled pending his first PCR application, but that period of tolling ended on February 21, 2006. The limitations period, therefore, expired some 67 days later. This objection is denied.



[4] While the United States Supreme Court has acknowledged that district courts are permitted "to consider, sua sponte, the timeliness of a state prisoner's habeas petition," this power should be used cautiously. Day v. McDonough, 547 U.S. 198 (2006); see McMillan v. Jarvis, 332 F.3d 244, 249 (4th Cir. 2003). Likewise, the Fourth Circuit Court of Appeals mandates that the "district court ought at least inquire whether there are any facts not apparent to the court that would militate against the application of the limitations bar." McMillan, 332 F.3d at 249.

Respondent that this ground was procedurally defaulted because the Petitioner did not raise this issue in his direct appeal or in his first PCR application and because he could not demonstrate sufficient cause and actual prejudice to overcome the procedural default.[5]

In his objections, the Petitioner acknowledges that he never raised this ground on direct appeal or during his first PCR but claims that it is "newly discovered evidence," which he did not discover until November 30, 2004, when he received the Appendix. The Court finds this objection to be without merit. First, the Petitioner has not demonstrated sufficient cause and actual prejudice to overcome the procedural default because even if he did not discover this claim until November 30, 2004, as he alleges, he still cannot explain his failure to raise the claim during his first PCR, which remained pending until February 21, 2006. In addition, as the Magistrate Judge noted, even giving the Petitioner every benefit of the doubt, claims arising from state law are not cognizable on federal habeas review, and state court indictments "are not ordinarily a basis for federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process." Ashford v. Edwards, 780 F.2d 405, 407 (4th Cir. 1985). The Petitioner's objection is therefore denied.

---

[5] The doctrine of procedural default provides that "a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule." Burket v. Angelone, 208 F.3d 172, 183 (4th Cir. 2000). A state procedural rule is adequate if it is regularly or consistently applied by the state courts, Johnson v. Mississippi, 486 U.S. 578, 587, 108 S.Ct. 1981 (1988), and it is independent if it does not depend on a federal constitutional ruling, Ake v. Oklahoma, 470 U.S. 68, 75, 105 S.Ct. 1087 (1985). Where a state procedural rule is both adequate and independent, it will bar consideration of the merits of claims on habeas review unless the petitioner demonstrates cause for the default and prejudice resulting therefrom or that a failure to consider the claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

### Ground Two: Prosecutorial Misconduct by the Clemson Police Department

In ground two, the Petitioner claims that he was subjected to prosecutorial misconduct by the Clemson Police Department because the officers did not conduct a line-up with the witnesses prior to trial, violating his Sixth and Fourteenth Amendment rights. In the R&R, the Magistrate Judge concluded that this ground was procedurally defaulted because the Petitioner did not raise it on direct appeal and because, although the Petitioner raised the issue in his first PCR, the PCR court did not rule on it and the Petitioner did not file a Rule 59(e) motion seeking a ruling on the issue. The Magistrate Judge further concluded that the Petitioner failed to demonstrate sufficient cause and actual prejudice to excuse the procedural default.

In his objections, the Petitioner asserts that he did raise this issue in a Rule 59(e) motion and that the South Carolina Supreme Court ruled on the issue. After a review of the record, it appears that the Petitioner may have sufficiently raised the issue of prosecutorial misconduct, an issue that the South Carolina Supreme Court denied, albeit summarily and without discussion. Nevertheless, even giving the Petitioner the benefit of the doubt and finding that this ground was not procedurally defaulted, the Court still finds that the Petitioner is not entitled to relief. First, the Court does not find that the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." See 28 U.S.C. Here, contrary to the Petitioner's assertion, he does not have a Fourteenth Amendment right to a line-up.[6] See



---

[6] A line-up must be conducted in a fundamentally fair manner, but that does not mean that a line-up must be conducted. See Manson v. Brathwaite, 432 U.S. 98 (1977) ("Where their Sixth Amendment holding did not apply, Stovall found an analogous Fourteenth Amendment right to a lineup conducted in a fundamentally fair manner.") (citing

United States v. Jones, 495 F.2d 1370 (4 th Cir. 1974) ("[A] defendant has no enforceable right to a line-up, even if the request is timely made."); United States v. White, 482 F.2d 485, 488 (4 th Cir. 1973) ("There is no authority to support a contention that a defendant has a legal right to a line-up, if he requests it."); Doss v. Corr. Dep't Unit #24, 396 F.Supp. 806, 807 (W.D. Va. 1975) ("A person has no right to be placed in a line-up."). Based on the foregoing, this claim is denied.

### Ground Three: Prosecutorial Misconduct by Detective Robert Crooks

In ground three, the Petitioner alleges that Detective Crooks committed prosecutorial misconduct when he lied to the magistrate about the existence of an eyewitness to obtain an arrest warrant. In the R&R, the Magistrate Judge noted that the Petitioner failed to raise this issue on direct appeal or in his first PCR. Moreover, although the Petitioner raised the issue in his second PCR, his second PCR was dismissed as untimely and successive. Finding that the Petitioner could not demonstrate sufficient cause and actual prejudice to overcome the procedural default, the Magistrate Judge recommended dismissal of this ground.

In his objections, the Petitioner claims that he did raise this ground in his first PCR application and points to testimony from the PCR hearing. Even considering the few lines of testimony cited by the Petitioner, however, the fact remains that the Petitioner did not raise this issue as a ground for relief in his PCR application, and to the extent that the issue was raised at the hearing, he did not seek a specific ruling from the court on this issue. Therefore, the Court agrees with the Magistrate Judge that this ground is



---

Stovall v. Denno, 388 U.S. 293 (1967)).

procedurally defaulted and should be dismissed. The Petitioner's objection is denied.

### Ground Four: Failure to Grant a Motion for Directed Verdict

In ground four, the Petitioner contends that the trial court erred by failing to grant his motion for a directed verdict. Essentially, the Petitioner argues that "there was no eyewitness, no physical, or no direct evidence tying the Petitioner to this crime." The Petitioner raised this issue on direct appeal, and the South Carolina Court of Appeals ultimately determined that circumstantial evidence existed from which a jury could logically deduce the Petitioner's guilt. The Magistrate Judge agreed with the state court, finding no reversible error in the trial judge's failure to grant a directed verdict. Therefore, the Magistrate Judge recommended that the Court grant summary judgment in favor of the Respondent with respect to this ground.

In his objections, the Petitioner merely rehashes his previously rejected arguments. The Petitioner asserts that the only evidence in this case was an inconsistent witness and that a directed verdict should have been granted.

A directed verdict is appropriate when "the State fails to produce evidence of the offense charged." State v. McHoney, 544 S.E.2d 30, 36 (S.C. 2001) (citing State v. Brown, 88 S.E. 21 (S.C. 1916)). Additionally, "[i]f there is *any* direct evidence *or* substantial circumstantial evidence *reasonably tending to prove* the guilt of the accused," then the Court must find the case was properly submitted to the jury and a directed verdict would have been improper. McHoney, 544 S.E.2d at 36 (emphasis added). Here, after a review of the record, the Court agrees with the Magistrate Judge and can find no reversible error in the state court's failure to direct a verdict, based on the circumstantial evidence

presented at trial. Stated differently, based upon the circumstantial evidence and testimony, the Court finds that the state court's decision was not contrary to, nor involved an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of facts in light of the state court proceedings. Therefore, this claim is denied.

### Ground Five: Ineffective Assistance of Trial Counsel

In ground five, the Petitioner asserts that trial counsel was ineffective for several reasons. Specifically, the Petitioner asserts that trial counsel failed to interview one of the state's witnesses, Melissa Hamilton, prior to trial; failed to call an alibi witness; failed to inform the Petitioner of the preliminary hearing; failed share with the Petitioner any discovery; and failed to object to in-court identification made by two witnesses, McDowell and Hamilton.

In his first PCR application, the Petitioner claimed that trial counsel was ineffective for failing to call alibi witnesses, for failing to fully inform him about the case, and for failing to interview Melissa Hamilton prior to trial. With respect to those claims not raised in the Petitioner's first PCR but raised in the present § 2254 petition, the Magistrate Judge found those claims procedurally defaulted. With respect to the claims the Petitioner previously raised in his PCR application, however, the Magistrate Judge found that the state court's denial of such claims did not constitute an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984), and was not based upon an unreasonable determination of the facts in light of the state court record.[7] Accordingly, the Magistrate

---

[7] A meritorious ineffective assistance claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance

16

Judge recommended that the Court grant the Respondent's motion for summary judgment.

In his objections, the Petitioner merely contends that his counsel was ineffective despite the state court's ruling to the contrary. Thus, in essence, the Petitioner simply rehashes arguments previously raised and rejected, and the Petitioner fails to point to any error in the R&R sufficient to alter the outcome.

Here, the Court has reviewed the record, including the state court's decision denying the Petitioner relief and the Magistrate Judge's analysis of the state court's decision, and finds that the Respondent is entitled to summary judgment on this ground. Stated simply, the Court finds that the PCR court's rejection of the Petitioner's claim that his trial counsel was ineffective did not result in an unreasonable application of Strickland and was not based upon an unreasonable determination of the facts in light of the state court record. The Petitioner's objection is therefore denied.

### Ground Six: Failure to Charge Lesser Included Offense

In ground six, the Petitioner asserts that the trial court erred by failing to charge a lesser included offense. This issue was not raised at trial, on direct appeal, or in the Petitioner's PCR proceedings. Accordingly, the Magistrate Judge found that the claim was

---

prejudiced the defense. Strickland, 466 U.S. 668, 687-98. The first part of the test, a court's evaluation of counsel's performance, must be "highly deferential" under this standard, so as not to "second-guess" the performance. Id. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks and citation omitted); see also Fields v. Attorney General of Maryland, 956 F.2d 1290, 1297-99 (4th Cir. 1992); Roach v. Martin, 757 F.2d 1463, 1476 (4th Cir. 1985). To establish prejudice and thereby fulfill the second prong of the ineffective assistance test, the challenging defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694-95.

procedurally defaulted.

In his objections, the Petitioner argues that the judge was required to charge a lesser included offense and that he was denied due process as a result of the judge's failure to charge a lesser included offense.

Upon review, the Court agrees with the Magistrate Judge that this ground was procedurally defaulted. Regardless, however, the Court finds that the Petitioner was not "entitled" to a charge on a lesser included offense. Here, the Petitioner argues that he did not commit the robbery and was not even present at the Arby's. The Petitioner does not argue that he committed some other act that could have been viewed by the jury as common law robbery or simple robbery. Therefore, the Petitioner clearly was not entitled to a charge on a lesser included offense. See State v. Drayton, 361 S.E.2d 329 (S.C. 1987) (holding that a defendant is not entitled to a robbery charge as a lesser included offense of armed robbery where, under the state's version of the facts, the defendant was guilty of armed robbery, and under the defendant's version of the facts, the defendant was innocent of any robbery charge). This claim is denied.

## CONCLUSION

Based on the foregoing, it is

**ORDERED** that the Magistrate Judge's R&R is adopted; the Petitioner's objections are overruled; and the Respondent's motion for summary judgment is granted.

**IT IS SO ORDERED**.

Sol Blatt, Jr.
Senior United States District Judge

August /3, 2008
Charleston, South Carolina

